and, if they had so found, they would have been compelled under the law to return a verdict for appellant. We see no error in appellee's second instruction.

Appellant argues further that he was entitled to a directed verdict because, taking the evidence most strongly for appellee, it did not tend to establish appellee's case made by the declaration. Appellant argues that the evidence falls short tending to establish that the appellee was at any time after his injury mentally unsound. We disagree with appellant. We think the evidence was sufficient to go to the jury on that issue.

*Reversed and remanded.*

---

BURCHFIELD et al. v. TOWN OF RULEVILLE et al.*

(Division A. March 7, 1927.)

[111 So. 565. No. 26274.]

1. DEDICATION. *Law requiring filing plat with mayor and aldermen held inapplicable to proposed town site, where there was no corporate existence (Code 1892, section 2937).*

Code 1892, section 2937, requiring map or plat and abstract of title to be filed with board of mayor and aldermen, *held* inapplicable to proposed town site, where there was no corporate existence at time plat was made and map filed.

2. DEDICATION. *Plat filed and recorded held to constitute "dedication" of lot therein marked "City Square" (Code 1892, sections 4399, 4402).*

Map or plat, filed and recorded in substantial conformity to Code 1892, sections 4399, 4402, *held* to constitute complete statutory dedication of lot marked "City Square" therein, as well as streets mentioned and alleys shown, to public use.

3. DEDICATION. *Filing of additional plat by attorney in fact held not to render both second and original plats void.*

Filing of additional plat by attorney in fact for original grantor *held* not to render both plats void, since, in so far as land was

conveyed under plats, it was ratification of original map, and in no sense constituted a revocation.

*Corpus Juris-Cyc References. Dedication, 18CJ, p. 66, n. 89; p. 67, n. 93, New, 96; p. 123, n. 1. As to whether filing of plat for record constitutes dedication, see 8 R. C. L. 895; 2 R. C. L. Supp. 579; 4 R. C. L. Supp. 677.

APPEAL from chancery court of Sunflower county.
HON. E. N. THOMAS, Chancellor.

Suit by Mrs. Johnnie Rule Burchfield and others against the Town of Ruleville and another. Decree of dismissal, and complainants appeal. Affirmed.

*Neil & Clark*, for appellants.

The complainants here allege that the dedication of "City Square" was intended for the use of a courthouse. The defendant town of Ruleville claims that it was intended for city park purposes. On that main issue, this case is presented. The contention of the complainants is based upon well-known and understood facts, going to the intent of the dedicators at the time of the alleged dedication. That of the defendant town of Ruleville rests upon usage and custom deemed to have been fairly in contemplation in the minds of the dedicators at the time of the attempted dedication. For a statement of the governing principles of law, see 18 C. J. 48, 49, 72, 73.

It requires no flight of imagination to see, that the square was intended "in fair contemplation," of the dedicator "under usage and custom," for courthouse purposes. "City Square" does not appear in the books, so far as we are able to find, and constitutes a name, legend or designation indefinite and insufficient in itself to dedicate for any particular purpose or use. Consequently, the purpose or use for which it was intended is subject to explanation by parol testimony just as in the case of any other written instrument. 18 C. J. 92.

This map fails as a statutory dedication under section 2924, Code of 1892. See also section 2937. There was no acceptance of the alleged offer to dedicate under the first map by statute or common law, and the same was revoked by the heirs at law of M. J. Rule.

In *Sandford et al.* v. *City of Meridian,* 52 Miss. 383, the court laid down the principle that a proposed dedication laid out in one map can be changed by a later map with the assent of previous vendees. The second map in the instant case, changing the first map and stating on its face that it was "intended to take the place of and be in lieu of" the first map, having been acquiesced in and recognized by the vendees of Charles V. Campbell, by the town of Ruleville and the public generally, any claims to a dedication subsequent to the filing of the second map must necessarily be based on the second map.

This map is signed by J. H. Rule, attorney in fact, and fails as a statutory dedication because no abstract of title was submitted, the name of the proprietor and *all of them,* as provided by section 4400, fails to appear. Emma Rule, one of the heirs of M. J. Rule, deceased, was a *non compos mentis* and wholly incapable of conveying her property through power of attorney or deed executed by herself. Consequently, even if J. H. Rule had acquired power to donate the land embraced in the second map to the general public under his power of attorney, it could not have been a binding gift or donation because Emma Rule was incompetent. 18 C. J. 42, paragraph 13; *Bruce* v. *Seaboard Air Line,* 41 So. 883; *Bushnell* v. *Scott,* 94 Am. Dec. 555; *City of St. Louis* v. *Laclede Gas Light Co.,* 9 A. S. R. 334.

But should the court agree with the findings of the chancellor that the acts of the alleged dedicators of "City Square" in fact constituted a dedication of the same, it cannot be deemed "from usage and custom to have been fairly in contemplation" to dedicate for city park purposes as expressed in the decree of the court below. Hence, the real intent of the dedicators can be

explained by parol testimony. See 18 C. J., cited above.

If the specific purpose for which the dedication is made fails or becomes impossible, the property reverts to the original donors. *Gaskins* v. *Williams*, 35 L. R. A. (N. S.) 603. Sunflower county has abandoned the property for the use dedicated, as shown by the answer filed; has admitted the failure and impossibility of that use and the title to "City Square" has, consequently, reverted to the complainants in this case. *Rowzee* v. *Pierce*, 75 Miss. 487, citing with approval *Board of Education* v. *Edson*, 180 St. 226.

Nor can the defendant town convert the property to city park purposes from courthouse purposes as intended by the dedication. *Rowzee* v. *Pierce, supra.* Nor can the same be used for purposes other than as dedicated, namely, for a school house. *Ibid.* Nor a public library. *Jones* v. *Jackson*, 104 Miss. 450.

Failure or impossibility of the purpose of the dedication amounts to an abandonment. 18 C. J. 123, 128. Consequently, the renting of the property to shows, the proceeds thereof being placed in the town treasury, and the letting of it for farming purposes constitute misuser and diversion by the defendant town.

After the map had been recorded, Mrs. Rule executed three separate deeds, conveying five lots by specific reference to this map. "City Square" shown on said map was never assessed for taxes nor were any taxes thereon ever paid. As to the effect of these facts, see *City of Jackson* v. *Laird*, 55 So. 41-42.

After Mrs. Rule's death, her immediate heirs, by specific reference to said map, conveyed eighteen lots; the appellants and those through whom they claim title conveyed twenty-eight lots by specific reference to the same map; in addition to other acts, the municipal authorities caused an official map of the town to be made, which was approved and recorded whereby the map caused to be made by Mrs. Rule was incorporated as an integral part thereof; and then the appellants and those through whom

they claim title, by specific reference to *this* map, conveyed thirty-two lots.

Throughout the entire period the public limited only by the control and aid of the municipal authorities has made use of this square. For the law applicable to these facts, see *Vick v. Vicksburg*, 1 How. 379; *Woodyear v. Hadden*, 5 Taunt. 125; *Briel v. City of Natchez*, 48 Miss. 435; *City of Meridian v. Poole*, 40 So. 551.

Wherefore, we submit that there has been, by Mrs. M. J. Rule, a statutory dedication of "City Square." If not, there has been a common-law dedication by the appellants or those through whom they claim title, or if not that the appellants and those through whom they claim title are estopped from asserting the contrary. The block of land designated "City Square," was specifically dedicated to Sunflower county for courthouse purposes, though dedicated to public use. *M. E. Church v. Hoboken*, 97 Am. Dec. 696-98; *Rowzee v. Pierce*, 75 Miss. 855-60.

The word "city," immediately preceding the word "park," and immediately preceding the word "square," indicates more clearly an intention to dedicate for a public use. *Archer v. Salinas City*, 16 L. R. A. 146. See, also, *Ramstad v. Carr*, L. R. A. 1816B 1160; *McAlpin v. Ry. Co.*, 1 A. & E. Ann. Cas. 452 and note; *Cole v. Loan Co.*, 17 A. & E. Ann. Cas. 304 and note.

In conclusion, we submit that if the only question on this appeal was whether "City Square" could be turned over to the county for courthouse purposes, a negative answer would at once be forthcoming.

*Chapman, Moody & Johnson* and *Herring & Wiley,* for appellees.

In the appellant's brief it is contended that the law in force was not complied with when the first map was made and filed for record. This map was made and filed for record when the Code of 1892 was in effect and our

contention is that sections 4399-4402 of this code are applicable to the making and the filing of the map. In the appellant's brief the contention is made that sections 2924 and 2937 of that code were applicable.

This contention is erroneous because, in the first place, there was no existing municipality at the time when this map was made and filed for record; and, in the second place, affirmative action by the mayor and board of aldermen was necessary.

As to the revocation or vacation of any portion of the first map by the second map, there is yet another fatal objection to such a contention. Even had Mrs. Rule, who caused the first map to be made, caused the second map to be made, it would not have had the effect of vacating all, or any part, of the first map. Section 4404, Code of 1892.

In other words whenever any city, town or village was laid out and the proprietor thereof caused a true map or plat thereof to be made and filed for record, in accordance with the provisions of sections 4399-4403, Code of 1892, it shall not be altered or vacated, in whole or in part, except in accordance with the provisions of the section hereinabove cited, section 4404.

Wherefore, we contend that when Mrs. Rule, who then owned the land, caused the first map to be made and recorded, and sold lots by specific reference to it, the lot of land thereon designated "City Square" was constitutive of a statutory dedication which could not be revoked except in the manner prescribed by section 4404; 18 C. J., page 73.

As to a common-law dedication or a dedication by estoppel, see 18 C. J., pages 58-60. As to the intent to dedicate manifested by the act of the owner, there is no difference as to the thing dedicated. *Indianola, etc.*, v. *Montgomery*, 37 So. 958-9; 18 C. J., pages 63-64. It is needless to say that if there had been a common-law dedication by Mrs. M. J. Rule, or by those through whom the present

appellants claim title, the present appellants are bound thereby.

McGowen, J., delivered the opinion of the court.

The appellants, complainants in the court below, exhibited their bill in the chancery court of Sunflower county asserting title in themselves to a certain small block of land situated in the town of Ruleville, and described on all the maps of said town as "City Square," asserting that the block of land had been dedicated by Mrs. M. J. Rule (through whom they claimed to derive title) to the county of Sunflower for the erection of a courthouse; that the purpose of the dedication had failed, and that the land which their ancestor, Mrs. M. J. Rule, had intended to dedicate reverted to them because of the permanent failure of the purpose for which the land was dedicated.

The bill prayed for the cancellation of the maps or plats, and for the investiture of the title in the complainants as the real true owners of the block of land.

The county of Sunflower was made a party. It admitted that the complainants were the heirs of Mrs. Mary Jane Rule, and successors in title; admitted that the map had been executed; admitted that no hope was entertained for the erection of a courthouse thereon; and made their answer a cross-bill for taxes on the lot if the title was adjudged to be in the complainants.

The town of Ruleville in their answer admitted that Mrs. Mary Jane Rule, prior to her death, was the owner in fee of the land in controversy. They charged that the map filed as Exhibit A, platted and acknowledged by Mrs. M. J. Rule in her lifetime, was a true and correct map or plat; also set up conveyances according to the map platted by Mrs. M. J. Rule prior to her death; set up that the lot had been dedicated to the municipality of Ruleville; and that the platting of the town, the filing of the map, and the execution of deeds by Mrs. M. J.

Rule according to said map, and the making of deeds after her death by her heirs at law, together with the acceptance by the town of various acts of ownership constituted a dedication according to the statute—a dedication according to the common law and a dedication by estoppel.

The facts here stated are such as we deem necessary to an understanding of the points decided.

On the 31st day of May, 1898, a map or plat of "Rule ville, Sunflower county, Miss.," was filed with the chancery clerk, and by him received as a proper map or plat of said town. Said map or plat contains the signature of Mrs. M. J. Rule as proprietor as to the correctness, showing the section, township, and range of the lands platted, certificate of the justice of the peace taking the acknowledgment of the proprietor and the surveyor, and also the certificate of the chancery clerk of the correctness of the map of the proposed town. In brief, the map disclosed about one hundred lots east of the Yazoo Delta Railroad fronting on said railroad, beginning with Front avenue, next east Ruby avenue, next Chester avenue, and next Shaw avenue. Then, beginning on the north, there were Harrison, Church, Floric, and Gladys streets. The land was divided into blocks subdivided into lots, and the lots were numbered. On the west side of the proposed town, practically in the middle between two blocks, the lot of land in controversy here is shown as a lot three hundred feet by three hundred feet, and is marked in large, plain letters "City Square."

When this survey was made, and this plat or map filed, it was of a part of an old field belonging to Mrs. Mary Jane Rule.

In the following year after the death of Mrs. M. J. Rule, there was filed what is called an amendment to the map or plat by J. H. Rule, attorney in fact for the heirs at law of Mrs. M. J. Rule. The only amendment worthy of notice, so far as the lots, streets, blocks, etc., are concerned, is the size of the lot designated "City Square," which lot is reduced fifty feet on the side next

146 Miss.—37.

to the railroad. This amended map or plat was filed and recorded on June 10, 1899.

The village of Ruleville was incorporated as a municipality on the 23d of September, 1899, many months after the M. J. Rule map had been platted and received for filing by the chancery clerk of that county. In her lifetime Mrs. M. J. Rule conveyed lot 24, black 3, lots 3 and 4, block 8, and lots 13 and 14, block 4, according to said recorded map.

In 1905, by proclamation duly made, the village of Ruleville was elevated to the rank of a town. In 1907, the town of Ruleville, having grown much larger than the town originally laid out by Mrs. Rule, had a map made, including additions, but strictly copying and adopting the original map as platted by Mrs. M. J. Rule, except as to the size of the city square lot here in controversy. And later another map was made, there being at least four maps, all of which show this plat of ground as "City Square."

In 1903 the heirs at law of Mrs. Mary Jane Rule had a partition suit in which all the other lots unsold were embraced. It was the apparent effort of the parties to partition all the lands they held in that vicinity, and no reference was made to this city square lot.

It was shown that at one time the town had fenced this square, and at another time rented it; that some trees had been planted out; that the public had access to it; and that it was used for public speakings about like parks are usually used in the average Mississippi town of the size and population of Ruleville.

Complainants showed that it was understood and talked in the family that Mrs. Rule intended for a courthouse to be built on this lot. They also showed that the leaders of the county in politics and otherwise had decided that there could be no courthouse erected on this lot; that the idea of establishing a courthouse at Ruleville had been abandoned.

The chancellor, having heard the facts, entered a decree for the town of Ruleville dismissing the bill, and the complainants appeal there.

There are two propositions submitted to us for reversal:

First. The plat or map filed by Mrs. M. J. Rule on the 31st day of May, 1898, designating this lot as "City Square," did not conform to section 2937 of the Code of 1892, which Code was in effect at the time this plat or map was filed, in that there was no correct abstract of title of the land platted filed with the board of mayor and aldermen, and approved by them.

The answer is clear and patent that one desiring to plat land, and file a map thereof, proposing to create a town site, could not file a map or plat and abstract of title with the board of mayor or aldermen of a municipality which only existed as a dream or in the desire and imagination of the proprietor of the land. And this section of the Code does not apply to a proposed town site where there is no corporate existence at the time the plat is made and the map filed.

This map or plat was made, filed, and recorded in substantial conformity to section 4399 and section 4402 of the Code of 1892; and, in our opinion, constitutes a complete statutory dedication of the lot marked "City Square," as well as the streets mentioned and alleys shown, to the public use.

Section 4399 provides that, whenever any city, town, or village or addition thereto shall be laid out, the proprietor shall cause a true map to be made. Sections 4400 and 4401 provide the schedule, kind of paper, detailed description of the land, the name of said town or village or addition to be platted, the names of the proprietor and the engineer or surveyor making the plat, and provide that the owner and surveyor shall sign and acknowledge the plat; how the lots shall be numbered, and the dimensions of same, the blocks, etc. And section 4402 provides that the chancery clerk shall carefully examine the map

or plat when it is presented to him to see if there is any defect in it, and if it conforms to the requirements of the law; and, having compared it with a duplicate, the clerk shall file the duplicate and keep same fastened in a book.

Counsel for appellants do not attack the map as not conforming to the sections just quoted, but contend that the map should conform to the other section here stated. Suffice it to say that there is manifestly no merit in this contention.

Second. Counsel for appellants seem to contend that, because J. H. Rule as attorney in fact undertook to file an additional plat, not changing the names of the streets or the name of this particular block, rendered both void. We do not think there is any merit in this contention. The plat filed and the deeds made thereunder constitute both a statutory and a common-law dedication, and whether or not J. H. Rule could bind one under disability by the execution of another map, amended under a general power of attorney to convey land, is not necessary for us to decide, but, in so far as he conveyed land under the plats, it was a ratification by his principals of the original map, as was his execution of a second map, and in no sense constitutes a revocation.

The only question that could possibly arise is whether or not J. B. Rule could reduce the size of the lot designated "City Square," and that question does not arise here.

We think it is futile and idle to discuss the proposition that, where a town site is platted, laid out, and a map filed according to the statute, and afterwards the town comes into existence, as in this case, and all the deeds are executed with reference to that plat which designates a lot of land as "City Square," that it was not intended as a donation to the public of a city square, but was intended entirely to operate as a dedication of the lot of ground to the county for a courthouse. The map shows on its face that it was a dedication by the proprietor of the streets, alleys, and city square for the purpose of es-

tablishing the town of Ruleville; that, when the town of Ruleville was incorporated, the use of the streets and of this "lot" as a park was an acceptance of the dedication; and the testimony undertaking to change the express purpose as reflected in the map itself was not competent. The dedication was to the proposed town of Ruleville of this city square for a park and public purposes, and was accepted by the town of Ruleville when it afterwards came into existence. As reflected by the map itself, the dominant idea of Mrs. M. J. Rule in platting, filing, and recording the map with town lots, avenues, alleys, and streets, and a city square, was to create a town. It could hardly be that she intended other than what the map clearly shows.

There is absolutely no merit in the contentions of appellants submitted here. The map or plat of the town of Ruleville, filed by Mrs. M. J. Rule and acknowledged by her, speaks louder and clearer as to her dominant purpose than any recollections of conversations that she intended to dedicate it to another party and for another purpose. The chancellor was correct in dismissing the bill.

*Affirmed.*